IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SILICON POWER CORPORATION | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GENERAL ELECTRIC | : | |
| ZENITH CONTROLS, INC. | : | NO. 08-4331 |

<u>**MEMORANDUM**</u>

**Padova, J.**                                                                                                                 **July 7, 2009**

General Electric Zenith Controls, Inc. ("GE Zenith") has filed a Motion to Strike the Motion to Vacate Arbitration Award filed by Silicon Power Corporation ("Silicon Power"). By agreement of the parties, GE Zenith's Motion is being treated as a motion to dismiss. For the reasons that follow, the Motion is denied.

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

Silicon Power is a Pennsylvania corporation "engaged in designing, engineering and producing components and systems for the electrical power industry." (6/24/09 Hrg. Tr. at 11; Final Arb. Award at 1.) Its products are used in telecommunications, computer networks, office and industrial parks and computer data centers (collectively referred to as the "Critical Power Market"). (Final Arb. Award at 1.) GE Zenith, a division of General Electric, Inc., is a Delaware corporation involved in the manufacture, design and marketing of components for the Critical Power Market. (<u>Id.</u>) The dispute between Silicon Power and GE Zenith involves transfer switches (switches that are used to switch equipment to a new source of power when its primary power source fails). (<u>Id.</u> at 2.) In 2000, Silicon Power developed new technology for transfer switches. (<u>Id.</u>) Silicon Power and GE Zenith negotiated two agreements involving this technology, the Supply and Distribution Agreement, dated September 21, 2001 (the "SDA") and the Joint Development Agreement, also

dated September 21, 2001 (the "JDA").  (Id. at 3-4.)  Under the SDA, Silicon Power agreed to provide products using this new technology for distribution by GE Zenith on an exclusive basis in North American and, under the JDA, the parties agreed to work together on certain tasks relating to product development.  (Id. at 4.)

In the end, only one product was introduced using the new technology and it had "abysmally low" sales.  (Id.)  Silicon Power then initiated an arbitration, claiming that GE Zenith failed to meet the sales targets in the SDA and that its failure was entirely the fault of GE Zenith.  (Id.)  John Wilkinson arbitrated the dispute in New York, New York.  (Id. at 27.)  Silicon Power initially sought damages in the amount of $12,000,000, and later raised its demand to $433,901,000.  (Id. at 4.)  Wilkinson denied all of Silicon Power's claims in a Final Arbitration Award dated June 11, 2008.  (Id. at 26-27.)

Silicon Power filed its Motion to Vacate Arbitration Award (the "Motion to Vacate") in this court on September 9, 2008 and e-mailed a copy of the Motion to Vacate to GE Zenith's attorney that same day.  (2/5/09 Cert. of Service.)  On September 16, 2008, Silicon Power sent a time-stamped copy of the Motion to Vacate to GE Zenith's attorney by Federal Express.  (Silicon Power Ex. 2.)  GE Zenith did not file a response to the Motion to Vacate, but instead filed the instant Motion.

## II.   DISCUSSION

GE Zenith asks us to dismiss the Motion to Vacate because it was not served in the manner required by the Federal Arbitration Act ("FAA") within the time limitations provided by the FAA. GE Zenith contends that this Court should dismiss this proceeding for failure to comply with Fed. R. Civ. P. 12(b)(4) ("insufficient process") or 12(b)(5) ("insufficient service of process").  (Mem.

at 3.) "[A] Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1353 (2004). As there was no summons in this case, because this proceeding was initiated by the filing of the Motion to Vacate, Rule 12(b)(4) is inapplicable. "A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery . . . ." Id. Consequently, we will consider GE Zenith's Motion pursuant to Rule 12(b)(5). When a motion to dismiss is brought pursuant to Rule 12(b)(5), "[t]he burden of proof is on the party asserting the validity of service." Marks v. Alfa Group, Civ. A. No. 08-5651, 2009 WL 1312599, at *1 (E.D. Pa. May 11, 2009) (citing Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476 (3d Cir.1993)).

The FAA requires that a motion to vacate an arbitration award be filed and served within three months after the award is filed or delivered:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

9 U.S.C. § 12. This time limitation is strictly construed, and "'a party may not raise a motion to vacate, modify or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm.'" Wallace v. Buttar, 378 F.3d 182, 197-98 (2d Cir. 2004) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1984)). See also Service

Employees Int'l Union, Local No. 36 v. Office Ctr. Servs., Inc., 670 F.2d 404, 409 (3d Cir. 1982) (stating that the FAA disallows the raising of a defense to confirmation of an arbitration award more than three months after the award is issued). Consequently, if a party fails to serve a motion to vacate within the three month time period provided by Section 12 of the FAA, that party "forfeits the right to judicial review of the award." Piccolo v. Dain, Kalman & Quail, Inc., 641 F.2d 598, 600 (8th Cir. 1981). See also Webster v. A.T. Kearney, Inc., 507 F.3d 568, 572 (7th Cir. 2007) (noting that "service of a motion to vacate is the act that stops the three-month statute of limitations[,]" not the filing of the motion to vacate); Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d 1155, 1158 (10th Cir. 2007) ("'A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award.'" (quoting Int'l Bhd. of Elec. Workers, Local Union No. 969 v. Babcock & Wilcox, 826 F.2d 962, 966 (10th Cir. 1987))); Oberwager v. McKechnie Ltd., Civ. A. No. 06-2685, 2007 WL 4322982, at *5 (E.D. Pa. Dec. 10, 2007) ("A court may reach the merits of a motion to vacate an arbitration award only when notice of the motion is 'served upon the adverse party or his attorney within three months after the award is filed or delivered.'" (quoting 9 U.S.C. § 12 and citing Piccolo, 641 F.2d at 600)).

  **A.  Residency in the Southern District of New York**

GE Zenith argues that the Motion to Vacate should be dismissed because Silicon Power did not comply with the service requirements for adverse parties who are not residents of the district in which the arbitration took place. GE Zenith contends that it is not a resident of the Southern District of New York, where the arbitration took place and, consequently, Section 12 of the FAA mandated service by the marshal. GE Zenith has submitted evidence that: (1) it is a Delaware corporation with its principal office in Illinois; (2) it does not have an office in New York; and (3) it services its New

4

York customers from its New Jersey office. (Duffy Aff. ¶¶ 2-3.)

The FAA does not define residency and the parties have submitted no authority that defines that term for purposes of the FAA. The United States District Court for the Southern District of New York has found a foreign corporation to be a resident of that district for purposes of Section 12 of the FAA where the corporation consented to arbitration in the Southern District of New York and "throughout the arbitration purposely availed itself of the benefits of New York and the laws of New York." Possehl, Inc. v. Shanghai Hia Xing Shipping, Civ. A. No. 00-5157, 2001 WL 214234, at *4 (S.D.N.Y. Mar. 1, 2001). We are also guided by the definition of residency found in 28 U.S.C. § 1391. Section 1391 states that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). GE Zenith has been registered with the New York Department of State as a foreign corporation since February 28, 2000. See NYS Department of State, Division of Corporations, Entity Information, GE Zenith Controls, Inc., http://appsext8.dos.state.ny.us/corp_public/corpsearch.entity_search_entry.

"It is well-settled under New York law that registration [with the Department of State] subjects foreign companies to personal jurisdiction in New York." STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd., 560 F.3d 127, 131 (2d Cir. 2009) (citations omitted). Since GE Zenith is registered as a foreign corporation with the New York Department of State, it is subject to personal jurisdiction in New York. Consequently, GE Zenith is deemed to reside in New York for purposes of venue pursuant to 28 U.S.C. § 1391(c). We conclude, based on GE Zenith's residence under Section 1391(c), combined with its consent to arbitration in the Southern District of New York, and the fact that it availed itself of the benefits of New York for the purposes of that

arbitration, that GE Zenith is a resident of the Southern District of New York for purposes of the service rules set forth in Section 12 of the FAA. We further conclude that Silicon Power was required to serve GE Zenith with a copy of the Motion to Vacate as "prescribed by law for service of notice of motion in an action in" the United States District Court for the Southern District of New York. See 9 U.S.C. § 12.

### B. Service of a Motion in the Southern District of New York

GE Zenith argues that the Motion to Vacate should be dismissed because it was not served pursuant to the rules for service of motions of the United States District Court for the Southern District of New York. As discussed previously, Silicon Power sent a copy of the Motion to Vacate to counsel for GE Zenith by e-mail on September 9, 2008, and by Federal Express on September 16, 2008. (2/5/09 Cert. of Service, Silicon Power Ex. 2.)

#### 1. E-mail service on September 9, 2008

Federal Rule of Civil Procedure 5 permits service by electronic means "if the person consented in writing . . . ." Fed. R. Civ. P. 5(b)(2)(E). The Local Rules of the United States District Court for the Southern District of New York do not permit service by facsimile in most cases, but do allow service by other electronic means. See S.D.N.Y. R. 5.2, 5.3(b). Silicon Power admits that GE Zenith did not explicitly consent in writing to service by electronic means, but contends that its e-mail service was legally effective because it was the practice of the parties to serve documents by electronic means. (6/24/09 Hrg. Tr. at 10.)

The requirement that a party consent to service by electronic means in writing is strictly construed in the Southern District of New York and such consent may not be implied from a party's past actions. Ortiz-Moss v. New York City Dept. of Transp., Civ. A. No. 05-4206, 2008 WL

1944234, at *3 (S.D.N.Y. May 2, 2008) (citations omitted); see also Wright-Jackson v. HIP Health Plan, Civ. A. No. 07-1819, 2009 WL 1024244, at *7 (S.D.N.Y. Apr. 15, 2009) (sustaining objection to discovery request where request had not been timely served by mail, even though it had been timely served electronically, because defendant had not consented in writing to service of pleadings and discovery by electronic means). Since GE Zenith did not consent in writing to service by electronic means, Silicon Power did not effect service of the Motion to Vacate by e-mail on September 9, 2008 in accordance with the rules for service of motions prescribed by the United States District Court for the Southern District of New York. We conclude, accordingly, that Silicon Power's service of the Motion to Vacate by e-mail on September 9, 2008 did not satisfy the service requirements of Section 12 of the FAA.

### 2.     Federal Express service on September 16, 2008

Local Civil Rule 5.3(a) of the United States District Court for the Southern District of New York provides that service on an attorney by overnight delivery service is permitted for all papers other than a subpoena or summons and complaint. The Rule further provides that "[s]ervice by overnight delivery service shall be complete upon deposit of the paper enclosed in a properly addressed wrapper into the custody of the overnight delivery service for overnight delivery . . . ." S.D.N.Y. R. 5.3(a). Silicon Power served GE Zenith's attorney with a copy of the Motion to Vacate by Federal Express on September 16, 2008. (Silicon Power Ex. 2.) Silicon Power thus completed service of the Motion to Vacate in compliance with Local Rule 5.3(a) by Federal Express on September 16, 2008.

Section 12 of the FAA requires that service of a motion to vacate an arbitration award must be made "within three months after the award is filed or delivered." 9 U.S.C. § 12. The Arbitration

Award is dated June 11, 2008. GE Zenith admits that Silicon Power received the Arbitration Award by mail on June 16, 2008. (6/24/09 Hrg. Tr. at 5.) Accordingly, the issue before us is whether an arbitration award is "delivered" for purposes of Section 12 of the FAA on the date it is placed in the mail by the arbitrator, or the date it is received by the party moving to vacate.

GE Zenith relies on Webster for the proposition that an arbitration award is "delivered" on the date it is placed in the mail by the arbitrator. See Webster, 507 F.3d at 573. However, the Webster court found that the date of mailing was the date of "delivery" in that case solely because the parties to that case had agreed that the AAA arbitration rules governed their case and those rules "equate[d] 'legal delivery' with 'placement in the mail[.]'" Id. There is no evidence that the parties to this case have agreed to follow the AAA arbitration rules. Consequently, Webster does not apply.

The United States Court of Appeals for the District of Columbia Circuit is the only Court of Appeals to analyze the meaning of the word "delivery" as it is used in Section 12 of the FAA. See Sargent v. Paine Webber Jackson & Curtis, Inc., 882 F.2d 529 (D.C. Cir. 1989); see also Webster, 507 F.3d at 573 (stating that the D.C. Circuit is "the only other federal appellate court to decide what 'delivery' means for purposes of the FAA's statute of limitations"). The Sargent court concluded that the date of receipt is the date of delivery and that defining "delivery" as "mailing" would "hopelessly twist the ordinary meaning" of the term:

> Defendants argue that "delivered" in the phrase "filed or delivered" must mean "mailed, or otherwise sent." They suggest that since delivery must always follow a decision's filing, to read it as referring to the arrival at some destination would render "filed" meaningless. Certainly defendants have identified a curiosity in the statute, but their interpretation hardly solves it: they suggest no way in which *mailing* could precede filing any more than delivery. Perhaps the drafters contemplated the possibility of some technically defective filing, and wanted to be sure that in such a case the time limit would

> begin to run on delivery. We certainly see no reason to adopt a construction that hopelessly twists the ordinary meaning of the word "delivered" without in any way solving the problem of possible surplusage. Nor would we be justified in excising "delivered" from the statute.
>
> Defendants' argument that delivery is not synonymous with receipt does no better. While one can imagine cases in which the distinction could play a role, this is not one. The Sargents acknowledge receipt of the decision on the day it was delivered to the relevant address, and their complaint and motion were served within the required three months thereafter.

Id. at 531. This reasoning has been followed by the United States District Courts for the Southern District of New York and the District of Oregon. See Possehl, 2001 WL 214234, at *3 (stating that delivery, as used in Section 12 of the FAA, "means receipt of the award" (citing Sargent, 882 F.2d at 531)); Nordahl Dev. Corp. v. Salomon Smith Barney, 309 F. Supp. 2d 1257, 1269 (D. Or. 2004) (concluding that interpreting the word delivery in Section 12 of the FAA as "receipt . . . comports with ordinary meaning" (citing Sargent, 882 F.2d at 531 and Possehl, 2001 WL 214234, at *3). In addition, the United States Court of Appeals for the Tenth Circuit has stated, without analysis, that the date of delivery of an arbitration award is the date of receipt. See Pfannenstiel, 477 F.3d at 1158 ("Pfannenstiel received the NASD panel's decision on November 12, 2003. Under 9 U.S.C. § 12, he was required to serve notice of his application to vacate the award upon Merrill Lynch by February 12, 2004, three months from the date he received the decision."). We conclude, based upon this authority, that the word "delivery" is used in Section 12 of the FAA to mean "receipt." Consequently, we find that the arbitration award was delivered to Silicon Power for purposes of Section 12 of the FAA on June 16, 2008. We further conclude that Silicon Power served GE Zenith with the Motion to Vacate by Federal Express within three months after the arbitration award was

delivered, in compliance with the service requirements of Section 12 of the FAA.

### III.   CONCLUSION

For the foregoing reasons, we conclude that Silicon Power served GE Zenith with the Motion to Vacate in compliance with the requirements for service set forth in Section 12 of the FAA. GE Zenith's Motion to Strike or Dismiss is, accordingly, denied.

An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.